IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID BOY FULLER, #147 862, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:13-CV-417-WHA |
| | ) | [WO] |
| LT. NEARER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, an inmate incarcerated at the St. Clair Correctional Facility in Springville, Alabama, files the instant civil rights action under 42 U.S.C. § 1983 alleging claims of excessive force and a denial of adequate medical care in violation of his Eighth Amendment rights during his incarceration at the Montgomery County Detention Facility in Montgomery, Alabama. The complaint and amendment thereto are filed against Lieutenant Nearer, Sergeant Talley, Officer Grant, Officer Fleeton, Officer Eaves, Officer D. Harris, Nurse Slader, and Nurse Merritt. Plaintiff seeks damages, declaratory and injunctive relief, and requests trial by jury.[1] Doc. #s 1, 13.

Defendants filed answers, special reports, a supplemental special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. #s 24, 25, 26, 27, 38, 39. In these filings, Defendants deny they acted in violation of Plaintiff's constitutional rights. *Id.* Upon receipt of Defendants' special reports, as supplemented, the court issued an order directing Plaintiff

---

[1] The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special reports, supplemental special report, and any supporting evidentiary materials as motions for summary judgment." Doc. # 40 at 2. Plaintiff responded to Defendants' reports, *see* Doc. #s 29, 42, but his responses do not demonstrate there is any genuine issue of material fact.[2] *See* Doc. # 40 at 2. The court will treat Defendants' reports as motions for summary judgment, and resolve these motions in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

---

[2] Although Doc. # 30 is captioned as *Plaintiff's Submission of Affidavits and Documents as Part of the Response to Special Report and Initial Disclosures of Plaintiff*, no affidavit or document(s) responsive to the special report is included.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A. The Complaint

Pending before the court is Plaintiff's complaint and amendment thereto wherein he challenges the provision of medical care he received during his incarceration at the Montgomery

County Detention Facility["MCDF"] in April, May, and June of 2013, and claims he was subjected to excessive force on May 13, 2013. Specifically, Plaintiff alleges:

1.  On April 6, 2013, Nurse Merritt did not take Plaintiff's vital signs after he passed out and bumped his head;

2.  On April 30, 2013, while Plaintiff was experiencing chest pains, Officer Eaves covered the window with paper in violation of the Fourteenth Amendment "(lack of security);"

3.  On May 2, 2013 Officer Harris failed to give Plaintiff "medical help dealing with [his] diabetes" and failed to give him "presumed [sic] medication that was approved by a provider dealing with his diabetes and high blood pressure;

4. On May 6, 2013, Nurse Slader failed to bring him prescribed medication approved by a provider dealing with his diabetes and high blood pressure;

5. On May 12, 2013, after lockdown, Sergeant Talley, Lieutenant Nearer, Officer Grant, and Officer Fleeton handcuffed Plaintiff behind his back with a broken arm, shackled his feet, and left him in the dark for three hours and thereafter failed to provide him with a body chart;

6. On June 6, 2013, Nurse Slader denied him proper medical care when she sent him back to his cell when he was having chest pains and his blood pressure reading was 200/140;

7. On June 11, 2013, Nurse Merritt denied Plaintiff proper medical treatment after an officer called about Plaintiff having chest pain and he had to be put in the infirmary.

(Doc. #s 1, 13.)

**B. Medical Care Claim**

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show those responsible for providing medical

treatment acted with deliberate indifference to his serious medical needs.[3] *Estelle v. Gamble*, 429

U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182

F.3d 1248, 1254-55 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989);

*Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).   Specifically, correctional officials or

prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to

evidence deliberate indifference to serious medical needs."   *Estelle*, 429 U.S. at 106; *Mandel v.

Doe*, 888 F.2d 783, 787 (11th Cir. 1989).

> In articulating the scope of inmates' right to be free from deliberate indifference,
> however, the Supreme Court has also emphasized that not 'every claim by a
> prisoner that he has not received adequate medical treatment states a violation of
> the Eighth Amendment.'   *Estelle*, 429 U.S. at 105; *Mandel*, 888 F.2d at 787.
> Medical treatment violates the eighth amendment only when it is 'so grossly
> incompetent, inadequate, or excessive as to shock the conscience or to be
> intolerable to fundamental fairness.'   *Rogers*, 792 F.2d at 1058 (citation omitted).
> Mere incidents of negligence or malpractice do not rise to the level of constitutional
> violations.   *See Estelle*, 429 U.S. at 106 ('Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d
> at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute
> deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice
> does not constitute deliberate indifference).   Nor does a simple difference in
> medical opinion between the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment support a claim of cruel and unusual punishment.
> *See Waldrop*, 871 F.2d at 1033 (*citing Bowring v. Godwin*, 551 F.2d 44, 48 (4th
> Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

A correctional official or health care provider may be held liable under the Constitution for

acting with "deliberate indifference" to an inmate's health when the official knows that the inmate

---

[3] Plaintiff was a convicted inmate at the time of the events about which he complains. During his
incarceration at the county jail, Plaintiff was on loan from the St. Clair Correctional Facility and classified
as a medium security inmate. Records reflect Plaintiff was transferred from the St. Clair Correctional
Facility to MCDF on March 27, 2013, pursuant to a court order. He was transferred back to St. Clair on
May 15, 2013. On June 5, 2013, Plaintiff was transferred to MCDF pursuant to a court order and returned
to St. Clair on June 18, 2013. *See* Doc. # 25, Robinson Affidavit; Doc. # 39, Attachment 3 at 14-15,
Attachment 4 at 1-8.

faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not 'respond[] reasonably to the risk'. . ." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc), quoting *Farmer*, 511 U.S. at 844. "Even assuming the existence of a serious risk of harm and legal causation, the [defendant] must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists–and the [defendant] must also 'draw that inference.'" *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003), quoting *Farmer,* 511 U.S. at 837. Thus, in order to survive summary judgment on his claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant[']s deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### i. Defendants Merritt and Slader

Plaintiff alleges that Defendant Merritt failed to take his vital signs on April 6, 2013, after he bumped his head and failed to assess him on June 11, 2013, after an officer informed her he was having chest pain. In response to Plaintiff's assertion that on April 6, 2013, she failed to take his vital signs after he passed out and bumped his head, Defendant Merritt states Plaintiff refused treatment when she arrived at his cell after receiving a call from a jailer that Plaintiff stated he had bumped his head and was sitting on the floor of his cell. Although Defendant Merritt informed Plaintiff she was the nurse working for the jail that day and if he wanted a body chart prepared she would have to do it, he again refused treatment. Nurse Merritt and a witnessing officer signed a

treatment refusal form, and notified the facility physician of the incident. Doc. # 39, Merritt Affidavit, Attachment 39-3 at 1, Attachment 39-6 at 3, Attachment 39-7 at 11.

Regarding Plaintiff's allegation she did not assess him on June 11, 2013, after he complained of chest pain, Defendant Merritt denies any knowledge of such an incident. Chest pain is considered an emergency. Therefore, had Plaintiff notified the officer in the control booth inside the cell block as inmates are supposed to for medical complaints, Nurse Merritt affirms he would have been taken to the medical unit for further evaluation.[4] Doc. # 39, Merritt Affidavit, Plaintiff's Medical Records, Attachments 3-15.

Plaintiff claims that Nurse Slader failed to give him his prescribed medication on May 6, 2013. Nurse Slader states that at the 8:00 a.m. pill pass on May 6, 2013, Plaintiff picked out medications he did not want to take and gave them back. He did not show up for his noon medications. At 3:00 p.m. Plaintiff arrived at the infirmary for his diabetic finger stick and requested his noon medications. Because medication administration is only allowed one hour before and one hour after the scheduled medication time, medication Plaintiff would have received at the noon pill pass were scheduled for his 8:00 p.m. pill pass. Doc. #39, Slader Affidavit, Attachment 39-5 at 6, Attachment 39-8 at 12-13.

---

[4] Although Defendant Merritt has referenced the incorrect dates in her affidavit regarding Plaintiff's allegations of inadequate medical care, her response corresponds with Plaintiff's medical records. Although these records do not contain any entries about complaints of chest pain by Plaintiff on June 11, 2013, they do reflect that a jailer completed a form regarding Plaintiff titled "Chest Pain Report for Nurse" and medical personnel evaluated Plaintiff on June 10, 2103, for his complaint of experiencing chest pain. The jail physician was consulted and a note made indicating "no further orders at this time." Plaintiff was then returned to his cell.  Nursing notes made on June 12, 2013, reflect a correctional officer reported that Plaintiff complained of chest pain during pill call but medical staff noted he was fine and had no signs of distress. Medical personnel informed the correctional officer to advise Plaintiff to submit a sick call request to be seen by the doctor if he experienced a change in status.  Doc. # 39, Attachment 39-4 at 11-13.

While experiencing chest pains and high blood pressure (200/140) on June 6, 2013, Plaintiff alleges Nurse Slader denied him proper medical care when she sent him back to his cell. Doc. #s 1, 13.  Nurse Slader states Plaintiff returned to the county jail pursuant to a court order on June 6, 2013. Although intake had been completed, Plaintiff's medications had not yet been verified or approved and ordered by the facility doctor. Plaintiff's medical records reflect he received a body chart on June 6, 2013, in response to a distress call regarding his complaint he "fell out in that room, my B/P [blood pressure] was up earlier today. I feel dizzy & the back of my neck hurt probably from my BP being up." Nurse Slader evaluated Plaintiff and consulted with the facility doctor who directed that Plaintiff's prescribed medications be continued and that he be placed in the infirmary for any non-compliance with his medications. Following Nurse Slader's examination and evaluation of Plaintiff, he was returned to his cell. He was observed walking with a steady gait and with no distress noted. He was advised to rest on his bunk pending physician notification regarding orders for his medication and further treatment. Medical staff provided Plaintiff with his 8:00 p.m. medications pursuant to new orders received from the jail physician. Doc. # 39, Slader Affidavit, Attachment 39-4 at 2-5, 15, Attachment 39-8 at 7-11.

This court has conducted a thorough and careful review of all the evidentiary materials submitted by the medical defendants.  From that review, the undersigned finds Plaintiff received adequate and appropriate medical care and treatment from Defendants Merritt and Slader for his medical complaints.   He does not have a constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel.  The law is settled that "[s]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The medical defendants' evidence reflects that they with other

jail medical personnel monitored, evaluated, and treated Plaintiff regarding his medical complaints and concerns during his incarceration at MCDF in accordance with their assessment of his condition.   There is no indication in Plaintiff's medical records he was denied any necessary treatment or that he suffered any injury or damage due to a denial or a deficiency in the provision of his medical care. *See* Doc. # 39, Plaintiff's Medical Records at Attachments 39-3 - 39-8.

Plaintiff has come forward with no significantly probative evidence which demonstrates that Defendants Slader or Merritt disregarded a substantial risk to his health. *See Estelle*, 429 U.S. at 104-05 (mere negligence in providing medical care is insufficient to violate the Constitution). To the extent Plaintiff's claim is based upon his own disagreement with the prison medical staff about the course of his medical treatment, such claim does not amount to deliberate indifference. *Id.* at 107; *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). In addition, whether correctional medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."  *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995), quoting *Estelle,* 429 U.S. at 107.   Plaintiff has presented no evidence which indicates Defendants Slader or Merritt knew how they treated Plaintiff's complaints or concerns created a substantial risk to his health and that with that knowledge, consciously disregarded such risk. *Farmer*, 511 U.S. at 844.

Finally, any claim that specific medical procedures were impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). Here,

the court finds that no verifying evidence has been produced establishing any detrimental effect because of Defendants Slader's and/or Merritt's actions or that they demonstrated deliberate indifference towards Plaintiff's medical needs by intentionally delaying or withholding necessary medical treatment or medication (although the undisputed evidence reflects Plaintiff refused to accept some of his prescription medication on May 6, 2013), or by interfering with his ability to access any such necessary treatment or medication. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Plaintiff provides nothing more than his unsubstantiated opinions about the quality of the medical care he received. His opinions are insufficient to create a genuine issue, and his failure to support his claims with medical or scientific evidence is fatal to them.

As the medical records before the court simply do not reflect that the medical care provided to Plaintiff was so egregious as to constitute an Eighth Amendment violation, he has failed to establish deliberate indifference by Defendants Slader and Merritt. Summary judgment is, therefore, due to be granted in their favor.

**ii. Defendants Eaves and Harris**

Plaintiff alleges that on April 30, 2013, Officer Eaves covered the windows of the control booth with paper which blocked her view of the jail cells and inmates because she "did not want to be bothered by any problems." Plaintiff claims he was experiencing chest pain at the time and could not get Defendant Eaves' attention. Although Plaintiff argues Defendant Eaves' conduct violated his Fourteenth Amendment rights ("lack of security"), the court considers this claim as an allegation that Officer Eaves acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Doc. #s 1, 13.

On April 30, 2013, from 5:35 a.m. to 12:30 p.m., Defendant Eaves was assigned to the control booth where Plaintiff was housed. She denies placing paper over the control booth

windows to avoid contact with inmates, including Plaintiff, and has no recollection of anything out of the ordinary occurring that day during her shift. Doc. # 27, Eaves Affidavit.

Plaintiff does not Defendant Eaves' assertion she did not cover any windows in the control booth with paper. Deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," *Estelle*, 429 U.S. at 104–105. Here, however, there is no evidence Defendant Eaves, a non-medical jail officer, engaged in the alleged conduct much less in any conduct demonstrating deliberate indifference to Plaintiff's serious medical needs on April 30, 2013. The record contains no evidence of a subsequent grievance or request for medical attention submitted on or about April 30, 2013, by Plaintiff regarding any interference with an ability to obtain access to health care that day. Further, although Plaintiff states in his complaint he sought medical attention on April 30, 2013, for chest pain, in his opposition, he asserts he was seeking medical attention for headaches, nausea, and high blood pressure.  Doc. # 27, Eaves Affidavit; *see also* Doc. # 39, Attachments 39-3 – 39-8; Doc. # 42 at 2.

Regarding Plaintiff claims that on May 2, 2013, Defendant Harris could not see him or hear him calling her because she had also covered the windows of the control booth and that she failed to give him "medical help dealing with [his] diabetes" and failed to give him "presumed [sic] medication that was approved by a provider dealing with his diabetes and high blood pressure," Doc. #s 1, 13, Defendant Harris disclaims an awareness of any basis for Paintiff's assertions. According to Defendant Harris, on May 2, 2013, she was assigned to the control booth where Plaintiff was housed. At 10:10 p.m. Defendant Harris made a notation on the log sheet that she called a jailer and informed him Plaintiff complained of chest pains. At 10:15 p.m. the jailer advised Defendant Harris that Plaintiff would be escorted to the medical unit. At 10:20 p.m. a jail

11

officer escorted Plaintiff to the infirmary. Upon arrival at the infirmary, medical personnel evaluated Plaintiff for his complaints of chest pain. Plaintiff advised medical staff he "had been doing exercises earlier, pushups and jumping jacks." After taking his vital signs,[5] medical personnel advised Plaintiff to put in a sick call slip to see the doctor in the morning, educated him about how to position himself comfortably while lying down, and directed he not engage in further exercise until he had been seen by the doctor. Plaintiff was further advised to notify jail officials if he experienced any change in his condition and to follow up with sick call as needed. Medical notes made by jail medical staff on May 3, 2013 noted "no report of inmate calling to medical or report of chest pain." Doc. # 27, Attachment 27-2 at Harris Affidavit and Log Sheet; Doc. # 39 at Attachment 39-5 at 6.

In response to Defendants Eaves' and Harris' dispositive motion, Plaintiff has come forward with no evidence to rebut their evidence concerning their knowledge of his claims. He does not point the court to any evidence that would support his allegations that these Defendants ignored a serious medical condition, or that he suffered any detrimental effect because of their alleged actions. In addition, Plaintiff presents the court with no evidence that Defendants Eaves or Harris disregarded a substantial risk to his health by interfering with and/or delaying his ability to obtain necessary medical treatment. *See generally Farrow*, 320 F.3d 1235. Further, Plaintiff has failed to come forward with any evidence that Defendants Eaves or Harris knew that he faced as a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 836-37. The burden is on the party opposing summary judgment to submit affirmative evidence demonstrating there exists a genuine issue of material fact regarding an essential element of the claim. *Celotex*, 477 U.S. at 322. Plaintiff must go beyond the pleadings

---

[5] Plaintiff's vital signs reflected the following: blood pressure 132/78, heart rate 86, temperature 98, "RR 18," and "O2 98%." Doc. # 39, Attachment 39-5 at 6.

and "designate 'specific facts' showing that there is a genuine issue for trial." *Id*. at 324. Here, Plaintiff has failed to establish a genuine issue about deliberate indifference by Defendants Eaves and Harris.   The court, therefore, concludes their motion for summary judgment is due to be granted.

### C. Excessive Force Claim

Plaintiff alleges that on May 12, 2013, Defendants Talley, Nearer, Grant, and Fleeton ["correctional defendants"] "came to [his] cell after lockdown with lights off handcuffed him with a broken arm behind his back and leg shackled him in the dark for 3 hrs."[6]   Doc. # 1. The correctional defendants state there are no institutional records which reflect that any problems occurred with Plaintiff on May 12, 2013. An incident report prepared May 13, 2013, reflects:

> On May 13, 2013, Officer Fleeton was assigned as the Jl/2South Booth Operator. At approximately 2211 hours, Officer Fleeton was observing Officer Harris conducting roll call in Jl/2A cellblock. Upon completion of roll call in Jl/2A, Officer Harris exited Jl/2A cellblock and entered J1/2B cellblock to conduct roll call. At this time, Officer Fleeton observed Inmate Fuller standing in the doorway of his cell masturbating. This is going on while Officer Harris is conducting roll call. Mintues [sic] later, Officer Fleeton called Sergeant McCall (J1/Central Control Supervisor) and advised her of the situation in her area. Officer Fleeton stated that she wanted him [Fuller] placed in the exhibitionist suit. Sergeant McCall then informed Officer Fleeton to start writing the incident report on the situation that transpired and that she would pass the information on to Sergeant Myrick (J1/Supervisor).
>
> At approximately 2220 hours, Officer Fleeton called Jl/Central Control for the second time and briefed Sergeant Myrick of the situation. Sergeant Myrick relieved Sergeant McCall for her lunch break. After being briefed by Officer Fleeton, Sergeant Myrick called Booking and advised Sergeant Talley (Releasing Supervisor) of the situation. Sergeant Talley informed Sergeant Myrick that Inmate Fuller would have to be placed in restraints due to him not being able to fit into the exhibitionist suit.

---

[6] For the first time in his opposition Plaintiff alleges a failure-to-intervene claim against the correctional defendants. Doc. # 29 at 5. While the evidence does not support this claim, the court notes Plaintiff may not amend his claim(s) through his opposition. *See Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1314-15 (11th Cir. 2004).

At approximately 2242 hours, Corporal Richardson entered Jl/2South. Mintues [sic] later, Sergeant Talley, along with Officers Grant (E-Team Member), Oliver (J2/4South Rover) and Harris (Jl/2nd Floor Rover) arrived in Jl/2South. The aforementioned officers entered Jl/2B cellblock and placed Inmate Fuller in restraints. The aforementioned officers then reported to another incident. At approximately 2323 hours, Lieutenant Nearer along with Sergeant Myrick escorted E.M.T. Baxter to Jl/2South, so that E.M.T. Baxter can check the restraints on Inmate Fuller. Moments later, Sergeant Talley and Corporal Richardson returned the area to assist. At approximately 2327 hours, the [a]forementioned officers exited Jl/2South area. There were no injuries to the staff or inmates during this incident. At approximately 0116 hours, Sergeant Talley and Corporal Alexander returned to J1 /2B-16 to remove the restraints from Inmate Fuller without incident.

Officer Fleeton is requesting Inmate Fuller be brought before the Disciplinary Clerk on the following charges:

B6- Failing to comply with an officer's lawful order
B16 - Violating rules or regulations
C4- Indecent exposure (masturbating)

Doc. # 25, Exh. A.

The correctional defendants' evidence reflects that following a briefing on the situation regarding Plaintiff, the decision was made to place him in restraints because the exhibitionist suit would not fit Plaintiff who weighed approximately 335 pounds at the time of the incident. The correctional defendants deny Plaintiff's arm was broken before he was handcuffed nor was it broken after the restraints were removed. They further deny any use of force to apply or remove the restraints and maintain the restraints were applied to maintain security and restore order at the jail because of Plaintiff's violation of institutional rules. The undisputed evidence reflects that Plaintiff was placed in the restraints at 10:42 p.m., he was checked on by Defendant Nearer and another officer at 11:23 p.m. who found no problems or injuries, and at 1:16 a.m. Defendant Talley and another officer removed the restraints from Plaintiff without incident. On May 15, 2013, Plaintiff was transported back to the custody of the Alabama Department of Corrections. He signed

a release information form that day affirming that he had not been physically injured in any manner during his incarceration at MCDF. Doc. # 25, Exh. A-F.

The Eighth Amendment guards against the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. The protections of the Eighth Amendment are triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v Albers*, 475 U.S. 312, 319 (1986) (quotation marks and citation omitted). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10 (quoting *Whitley*, 475 U.S. at 327). The core inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (*per curiam*) (quoting *Hudson*, 503 U.S. at 7).

Whether force was applied maliciously and sadistically to cause harm requires analysis of several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts." *Wilkin*, 559 U.S. at 38. *See also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force...."); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management  by a few guards of large numbers of prisoners, not usually

the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force."); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

The unrefuted evidence reflects that approximately twenty minutes after being placed in restraints, medical personnel assessed Plaintiff noting that two fingers could slide underneath the restraints. He showed no signs of acute distress, his respiration was noted as "at ease and non-labored," and medical personnel observed "no [unintelligible] present to hands or feet with palpable pulses present." Plaintiff voiced no complaints of pain.[7] Doc. # 39, Attachment 39-5 at 1. Although Plaintiff claims to have suffered serious injury which required medical attention (Doc. # 29 at 4), other than this self-serving allegation, he has not provided evidence in the form of medical records or affidavits from medical professionals which reflect he suffered any injuries because of the incident including any evidence that his arm was broken.  *See, e.g.*, *Whitehead v. Burnside*, 403 Fed. App'x 401, 403 (11th Cir. 2010) (*per curiam*) ("[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.").

---

[7] Plaintiff's medical records reflect that on May 8, 2013, medical staff schedule him for a doctor's appointment on May 13, 2013. Physician notes made May 13, 2013, indicate Plaintiff had been seen multiple times for multiple complaint, he had been seen recently for "CC [chronic care] evaluation, and, was currently being seen for a complaint of numbness to his left arm related to a fall approximately a month earlier when Plaintiff had been in the infirmary. He had refused care at that time. The physician found no evidence of injury and that Plaintiff had FROM ["full range of motion"] of his elbow with slight redness but noting Plaintiff had been rubbing the area. The doctor's notes described Plaintiff as "malingering" and "drug seeking." The physician prescribed Motrin for Plaintiff, ordered that an x-ray of his elbow, and that he be provided a warm water soak for his left arm for four days. A body chart prepared May 14, 2013, in response to a "code blue," reflects Plaintiff had no acute distress, his respiration was noted as "at ease and non-labored," and no contusions, lacerations, or abrasions were observed by medical personnel. Although Plaintiff complained his left arm hurt, medical staff noted he was already receiving treatment for that complaint and it was noted he had no decreased range of motion. Doc. # 39, Attachment 39-3 at 3, 4, 12, Attachment 39-5 at 1, 2.

Viewing the evidence in the light most favorable to Plaintiff, the type of force, if any, used by the correctional defendants while placing Plaintiff in restraints is "not of a sort repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 10 (quotation marks omitted).  Rather, the evidence before the court reflects the correctional defendants acted "in a good-faith effort to maintain or restore discipline," and not "maliciously or sadistically to cause harm."  *See Hudson*, 503 U.S. at 7; *Wilkins*, 559 U.S. at 39.  Defendants Talley and Grant used a limited amount of force and no more than necessary to place Plaintiff in restraints to maintain order and security due to Plaintiff' violation of jail rules. Plaintiff's medical records made during and shortly after the incident fail to reflect he suffered any injuries because of the correctional defendants' actions. Furthermore, "in evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment." *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987).  "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.' " *McBride v. Rivers*, 170 Fed. App'x. 648, 656 (11th Cir. 2006) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)).   While this deference " 'does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.' " *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322).  Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"); *McBride*, 170 Fed. App'x. at 657 (although correctional officers

could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

Here, the undisputed record evidence reflects the correctional defendants' physical contact with Plaintiff does not appear to have been excessive under the circumstances. Put another way, the evidence fails to establish that the correctional defendants used any force in excess of that which was necessary to place Plaintiff in restraints to deter his misconduct or that they used force maliciously and sadistically for the very purpose of causing harm.   In light of the foregoing, the court finds Defendant Fleeton, Nearer, Grant, and Talley are due to be granted summary judgment on Plaintiff's Eighth Amendment excessive force claim.

### D. The Exercise of Supplemental Jurisdiction

Plaintiff asserts in the amendment to his complaint that he must add the "state law torts of wantonness, felonious injury, assault and battery, medical malpractice, and possibly others." Doc. # 13 at 2.   Review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction.  In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotation marks and citations omitted).  Exercising supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims in the complaint, Plaintiff's

supplemental state tort claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (Doc. # 25, 27, 39) be GRANTED;

2. Plaintiff's supplemental state law claims DISMISSED without prejudice;

3. This case be DISMISSED with prejudice;

4. Judgment be ENTERED in favor of Defendants;

5. Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before August 22, 2016**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 4th day of August, 2016.

/s/Terry F. Moorre
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE